## ISAAC FREY ET AL., EXEC'RS, v. DAVID HEYDT.

ERROR TO THE COURT OF COMMON PLEAS OF BERKS COUNTY.

Argued March 3, 1887—Decided October 3, 1887

Parol declarations of a parent are inadmissible to establish that money for which he held a bond against a child was an advancement, unless they are shown to be a part of the *res gestœ* and accompany the execution of the note, or are corroborative of acts and declarations that were contemporaneous.

Before Mercur, C. J., Paxson, Trunkey, Sterrett, Green and Clark, JJ.; Gordon, J., absent.

No. 282 January Term 1887, Sup. Ct.

Isaac Frey and Jeremiah Dierolf, executors of the will of Sarah Boyer, deceased, on April 20, 1885, brought suit against David Heydt upon the following note:

April 1, 1880.

One year after date I promise to pay to order of Sarah Boyer, (widow,) the sum of eight hundred and fifty dollars

with five per cent. interest, without defalcation, for value re-
ceived.            [Signed]            DAVID HEYDT, (L. S.)

David Heydt, the maker, paid interest on the note for two
years, the payments being credited by indorsement. The
payee died August 26, 1884, leaving a will.

On the trial under the plea of payment with leave the defend-
ant made the following offer:

John Heydt, sworn:

Defendant offers to show by the witness on the stand and
others, that the note in suit was given by mistake and does not
express the contract or understanding under which the money
was received from the plaintiffs' testatrix; that the $850 men-
tioned in the note were given by the testatrix, Sarah Boyer,
to her daughter and her husband, the defendant, as an ad-
vancement; with the distinct understanding and agreement at
the time of the receipt of the money that the said money should
never be repaid, and that it was upon this understanding that
the money was received; that the note in suit was written for
another purpose, but was signed by the defendant under the
mistaken impression that it was a note or paper prepared in
accordance with the understanding upon which he received
the money; that when the attention of the testatrix was called
to the fact that a mistake had been made, she said that it did
not make any difference, that all parties understood what the
contract was: they offer to show further that subsequently
upon different occasions the testatrix said that the money was
an advancement to her daughter.,

Plaintiffs object: 1st, because the contract is in writing;
2d, because the contract is in writing, bearing date April 1,
1880, and was subsequently ratified on the 1st day of April,
1881, and on the 1st day of April, 1882, by payments on said
contract, the defendant is thereby estopped; 3d, because the
plaintiffs' testatrix disposed of her estate by will; 4th, because
it is not proposed to prove fraud or mistake, or that anything
to the contract was omitted in the note at the time of its exe-
cution.

By the court: The evidence is admitted; exception.[1]

Under the offer the witness, who was a son of defendant,
testified that in April, 1880, on an occasion when his grand-

mother, with whom he was then living, had given a sum of money to her son Isaac Frey, she said she would give Betsie (Mrs. David Heydt) something too, she had never given her anything yet, and witness took the money, $850, down.

Q. Where did you take it to? A. I took it down to my father and to her, took it to David Heydt's. Sarah Boyer said my father should sign a note for the interest; when she needed it she would ask for it. The $850 was to be an advancement. I went down and he sent me home with it; my father sent me home. When I came back Sarah Boyer said that I did not explain the matter properly. I replied that I had. I then said, "I will take the money and put it in bank." Sarah Boyer then said, "You might lose it in bank." She then further said that John Landis had once asked her for money, and he would take money at any time. I then wrote a note and laid it with the money. That is the note. Landis did not pass along that way. I worked out every day. I had to come home every evening. Then on Friday evening I came home again and said to Sarah Boyer, "Now to-morrow I will take this money to bank." Then she said, "No, to-morrow morning you take this money down again, and now you explain it to them right." Q. Did you go down with the money? A. Yes, sir; and then I called her and him again. I then again said to them, "All that you shall do is to write a note for the interest, so if she needs it she will get the interest." He would not take it then. Then I took it in to my mother, who was her daughter. She then said, "We will keep it. We never got anything yet."

Plaintiffs object to any declarations made by the mother of the witness, the wife of this defendant, in the absence of the testatrix.

By the court: The witness was the agent of Sarah Boyer in the taking of this money down to Mrs. Heydt, and any declarations that were made to the agent in relation to this money, are admitted; exception.[2]

Q. Tell us specifically what you told them when you came down with the money that second time? A. I told mother if they would not take it they would never get a cent, and that Mrs. Boyer had so told me to tell her, to say so to Mrs. Heydt. Mrs. Heydt then said, "We will take it. I have never got

anything yet." I further said to Mr. Heydt, " You shall sign a note for the interest if Mrs. Boyer needs the interest." The principal should never be paid back again. That day there was no note signed. About three or four weeks afterward I came home, and then Mrs. Boyer said, "Now your father signed a note for it." I then replied, " There was none prepared for him." I asked her for the note and she showed it to me. Q. Was this the note she showed you? (Note in suit shown witness.) A. She showed me that note. I said, " This is wrong. I will go down immediately." I said, " I will go down immediately and tell him that this is wrong." Then Mrs. Boyer said, " No, don't." I said that this would make a trouble, and she said, " You stay here." She said, " If you do that he will bring the money back." It remained that way. In 1881 he sent the interest up with me. Then we got at each other again. Mrs. Boyer then said when I brought this interest, that I should not bring her any interest, if she wanted interest she would ask for it. In 1882 she sent the interest with me again, and then she scolded and said I should not take the interest along with me; if she wanted it she would ask for it. So it remained until some time in July. In July she threw it up to me that she had presented my mother with $850, that they could live big now, they could eat it up. I then said there must be an end of it, and I went down to father and told him to get the money ready ; to-morrow morning I would bring the note down and take the money; I did not want this thing thrown up to me any longer. I went down next morning, brought the money back and laid it down on the table to her, and the interest also, and then I said, " Now I want my note." She then said, " Now you put the money just where you got it; more they will never get." Some time after that, in August, I left.

Peter Heydt, sworn : Defendant proposed to show declarations made by the testatrix on the subject after the note was given. Plaintiffs make the same objection as to the first offer, *supra.* Objection overruled, evidence admitted; exception.[3]

The witness, also a son of the defendant, testified under this offer that on November 21, 1881, his grandmother then at defendant's house had scolded witness's mother; that his father came in and made a remark which offended his grandmother.

Q. Say what was said about the note or about the money?
A. Then it began and she said, " You will go down to Shraw-
der and make this expense too yet." Then she intimated as
if she had not done anything for him he would not have come
to anything. Then he said to her, " Grandmother, what you
have helped me to I can give to you." Then he went and got
half to pay to her, and the other half he was going to get her
in two hours, and she did not take it. Then she said, " David,
I gave you this as an inheritance, and this shall never be paid
back. Nothing do I want except the interest when I need
it." Then there wasn't anything further said, and that day
she went away, cross, angry and spiteful.

Under a like offer, objection and admission as the last pre-
ceding, Oliver Heydt, another son of defendant, testified to a
like conversation between the decedent and the defendant in
the last year of her life.

Q. Tell us what conversation took place? A. She came
out and asked my father what he had done with this money.
I don't remember what my father said that he had done with
it. He then said to her, " Mother, I have half of this money
at home in the house and the other half I can have here in
two hours." Then she said, " David, this you don't need to
give to me in your lifetime. This I have given Betsie as an
inheritance, and I don't want any interest unless I need it, and
if I need it I will ask you for it." That is all I heard of what
was said there at that time.

No testimony was adduced by the defendant as to anything
said or done at the time of the execution of the note.

The court, J. HAGENMAN, P. J., charged the jury:
This action is brought by the executors of Sarah Boyer, to
recover from David Heydt the amount of a promissory note
with interest. The note in suit, whether given on that day or
not, is dated on the first of April, 1880, and reads: " One
year after date I promise to pay to the order of Sarah Boyer,
widow, the sum of $850, with five per cent. interest, without
defalcation, for value received." Signed " David Heydt."
Upon this the plaintiffs ask that the jury find a verdict for
this amount with interest from the first of April, 1882.

The interest was paid on this note, as indorsed on the back

of it, on the first of April, 1881, and again in full on the first of April, 1882. This is the case that is presented upon the part of the plaintiffs, and if there were no further evidence the plaintiffs would be entitled to a verdict for the $850, with interest from the first of April, 1882, to the present time. The defendant, however, alleges that the $850 was not a loan, but was a gift upon the part of Sarah Boyer to her daughter, Mrs. David Heydt, as (using the German expression) "Arbshoft" —an advancement. Now, an advancement is a gift by a parent to a child in contemplation of the share of the latter in the estate after the decease of the former, and it is a gift that is not revocable. When it is once given, it is given, and the gift is absolute. Now, what evidence is there in the cause from which the jury may find that this $850 was a gift, and not a loan? The only witness who testifies as to the handing over and receipt of that money, is John Heydt, a son of the defendant. He says: . . . . . That is the testimony in regard to the passing over of this money. The jury will have to determine from this testimony as to whether there was, at the time when this money was passed over, an intention upon the part of Sarah Boyer to give this money to Mrs. Heydt or not. If it was then it would be an advancement. If she passed it over to her as part of her "arbshoft" on account of her inheritance, gave it to her never to be returned again, then it was an advancement. The evidence must satisfy the jury with some positiveness that this was a gift upon the part of Sarah Boyer to her daughter. There is some other testimony that was submitted by some of the other sons of David Heydt. Jacob Heydt says, speaking of his grandmother: "She said, ʻWhat your father and your mother had from me is all they will get from me.'" Peter Heydt, another son, was called and he talks about his mother having gone down into the cellar, the cellar door having fallen, and of something that occurred between the daughter and her mother. Then what was said was to the father. "She said to father that if she had not helped him he would have come to nothing. He then said that what he had from her he could pay back, and went and got half of the amount, and said he would get the rest in two hours. Then grandmother said, ʻDavid, I gave you this for arbshoft.'" Even if the jury take that declara-

tion as it is, it would not of itself be sufficient to convert the sum given into an advancement.   The advancement, if it was an advancement, must have been received, at the time when the money was passed over, as àn advancement, and must have been so intended by Mrs. Sarah Boyer at that time ; and, if it was a debt before, this subsequent declaration of hers would not convert that debt into an advancement.   It is claimed upon the part of the plaintiffs that although this is an acknowl- edgment by Sarah Boyer that this money was given as arbshoft, (that is as an advancement) yet the fact that David Heydt offered to return it shows that it was not recognized by him as such.   Oliver Heydt was also examined.   He says that he and his father were out and they stopped and talked with the old lady and " She asked my rather what he did with the money.   He said, ' The half I have at the house and the rest I can get you in two hours,' and she then said, ' David, you need not pay it back in your lifetime.   I gave it to Betsie as arbshoft.   You can only pay me the interest when I want it.' " This is all the evidence that I remember that bears upon this question.   [As I said before, the jury must inquire, first, How was this money handed over ?   How was it received ?   Was it received as an advancement, or was it received as a loan ?   If it was received as a loan, then these subsequent declarations, made by the old lady, do not convert that loan into an advance- ment, and the verdict would have to be in favor of the plantiffs. But if the jury find from the evidence of John Heydt that it was an advancement, these other declarations, which were sworn to by these other witnesses, if the jury believe them, are entitled to be considered.   That is about all I propose to say to you on this subject.   Here is the note, the evidence that it was a debt.   Was it a loan at the time, or was it a gift ? If it was a loan, then the plaintiffs would be entitled to a ver- dict, with interest from the first of April, 1882, to the present time.   If it was an advancement, a gift by Sarah Boyer to her daughter, then your verdict will be in favor of the defendant.][5]

Plaintiffs asks the court to instruct the jury that under all the testimony in this case, the verdict must be for the plaintiff for the amount of the note.   The court declines so to charge the jury.[4]

Under this charge the jury returned a verdict for the defend-

ant, and thereupon the plaintiffs took this writ specifying that the court erred:

1–3. In overruling the plaintiffs' objections to defendant's offers.[1–3]

4. In not affirming plaintiffs' point.[4]

5. In that part of the charge embraced in [ ] [5]

*Mr. Cyrus G. Derr* (with him *Mr. Henry C. G. Reber*), for the plaintiffs in error:

Oral proof to vary or affect a written instrument must be confined to what occurred at its execution, which is the material point of time. The admissibility of the declarations subsequent to the execution is altogether dependent upon the efficacy as instruments of proof of the first declarations; which being excluded, there remains nothing upon which the subsequent declarations can be supported: Rearick's Executors v. Rearick, 15 Penn. St. 66. Where an agreement is made and concluded, and solemn instruments executed between the parties, previous conversations and negotiations on the subject are to be considered as merged into the final agreement, and therefore the bond is to be held as expressing the deliberate and ultimate contract of the parties: Stine v. Sherk, 1 W. & S. 202. Merkel's App., 89 Penn. St. 343, is to be distinguished in this: (1) The note did not bear interest; (2) It was not payable on any specified day; (3) There was a receipt dated the same day for a like amount as an advancement. In the present case there is not a word of testimony of anything said or done at the time of the execution of the note tending to show it an advancement, and the note bears interest and two years interest was paid.

*Mr. Ruhl*, of *Ermentrout & Ruhl* (*Mr. Jeff. Snyder* and *Mr. George F. Baer* with them), for the defendant in error:

1. An advancement is an irrevocable gift by a parent in his lifetime to his child on account of such child's share in his parent's estate: High's App., 21 Penn. St. 283; Yundt's App., 13 Idem 575; Eshleman's App., 74 Idem 42. It is also a question of intention: Lawson's App., 23 Idem 85; Merkel's App., 89 Idem 343; and that intention must be proven to have existed at the time of the transaction, which is

when the money or other valuable thing is delivered to the child by the parent.

2. There can be no question but that Sarah Boyer was bound by the acts and declarations of John Heydt whom she had instructed to deliver the money to her daughter and to so tell her: Levering v. Rittenhouse, 4 Wh. 137. Therefore the case is clearly within Merkel's App., *supra.* The most that the plaintiffs could possibly claim would be, that the giving of the money and the signing of the note were parts of the same transaction; and, therefore, what occurred at either time was part of the *res gestæ.* When there is no evidence of what occurred at the time the money or other valuable thing was given and received, the surrounding circumstances are to be considered in determining whether it ought to be considered as a loan, a gift, or an advancement; it becomes necessarily a subject of presumption: Weaver's Appeal, 63 Penn. St. 309. But the defendant did not rely upon this presumption, and offered testimony to show that Mrs. Boyer declared subsequently that such was the understanding and agreement when the note was signed.

3. Rearick's Executors v. Rearick, 15 Penn. St. 66 and Stine v. Sherk, 1 W. & S. 202, are to be distinguished. There was no act done, nothing delivered, when the conversations offered to be proved were had; and see Lyon v. The Huntingdon Bank, 14 S. & R. 283; Robinson v. Eldridge, 10 S. & R. 142.

OPINION, MR. JUSTICE GREEN:

The instrument in suit is an absolute obligation of the defendant, to pay $850 to Sarah Boyer at one year after date with interest at five per cent. Sarah Boyer was the defendant's mother-in-law. Interest was paid on the single bill for two years; once he offered to pay the whole amount of the debt to Mrs. Boyer, and, at another time, he sent the amount in money by his son to pay it off. In the court below, the defendant was permitted to prove by the declarations of Mrs. Boyer that the money was given to the defendant's wife as an advancement and was never intended to be repaid, except that the interest was to be paid whenever Mrs. Boyer desired and demanded it. Thus the whole character of the obligation

was allowed to be changed radically, by parol proof of declarations of the obligee.

If these declarations had been made at the time the instrument was executed, they would have been brought within the decisions which hold that an apparent loan may be converted into an advancement, by proof of what was said and done at the time of the transaction. But there were no such acts or declarations given in evidence in this case. No proof whatever was introduced of what was said or took place when the single bill was signed. It was, however, affirmatively proved by the defendant's chief witness, who brought the money from Mrs. Boyer and left it with Mrs. Heydt, that the instrument was not signed then, and that, although he wrote the paper, he was not present when it was signed. It was not until three or four weeks after the money was left with Mrs. Heydt, that she told her son the note was signed, and that was the only means he had of knowing that it had been signed at all. It will be seen at once that if this absolute obligation is to be deprived of every particle of its obligatory force by means of parol testimony as to its meaning, it must be done in the entire absence of any proof whatever of what occurred at the time of its execution. There is no room for any allegation of fraud, mistake, imposition, or any breach of faith in using it. We are not aware of any decision of this, or any other court, which has permitted a solemn contract in writing to be destroyed by parol proof of a different meaning in such circumstances as these. Our own cases are very numerous and very familiar in which we have refused to allow it. It seems, however, to be supposed that because it is a question of advancement a more lax doctrine is applicable, and that the parol proof may be given, no matter when the facts or declarations transpired. But we do not so understand the authorities. In Merkel's Appeal, 89 Penn. St. 340, we said: "Advancement is a question of intent. That intent must be proven to have existed at the time of the transaction and by the contemporary acts and declarations of the parties. Verbal declarations of a parent that money for which he held a note or bond against a child was intended as an advancement, are insufficient to establish it as such. They must be shown to be a part of the *res gestœ*, and accompany the acts done."

The difficulty with the present case is that there is no proof of " contemporary acts or declarations." We do.not and cannot know what was said or done when the obligation in this case was signed. A previous purpose to give the money as an advancement may have been changed. The legal inference is that it was changed, because the obligation when executed is absolute, and that paper is the final expression of the intent of the parties. Against this final expression of the mutual intent of the parties, there is absolutely no testimony such as we can allow to prevail. For there being no evidence as to what was done or said when the obligation was executed, the subsequent declarations are incompetent. It is only when they conform to acts and declarations which were contemporaneous, that they are admissible: Merkel's Appeal, *supra.* Of just such proof we said in Rearick's Exrs. v. Rearick, 15 Penn. St. 66: "As to the subsequent declarations of the testator, it has already been intimated their competency is altogether dependent on the efficacy of the first conversations, as instruments of proof. The former are receivable only as corroborative of the latter and these being excluded there remains nothing upon which those can be supported."

So far as the subsequent acts are concerned the case is entirely against the defendant upon his own testimony. He paid interest on the bond for two years and offered to pay the principal on two different occasions, thus recognizing the obligation as a debt and not as an advancement. But the question here is, as to the efficacy of the parol proof to change the character of the contract; and we are clearly of opinion it was not sufficient without a radical departure from the entire current of our decisions. We are not willing to take such a step. Our constant experience warns us of the danger of transgressing the limits we have defined for the admission of parol testimony to change or destroy written instruments. We prefer to abide in the course indicated in all our recent decisions, believing it to be the path of safety and of wisdom. We are of opinion that the parol proof admitted in this case was incompetent and should have been rejected, and that the jury should have been instructed to return a verdict for the plaintiffs.

Judgment reversed and *venire de novo* awarded.